# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| FCCI INSURANCE COMPANY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| | § | Civil Action No. 4:25-cv-583 |
| ARTISAN MASONRY, INC., A&A | § | Judge Mazzant |
| GRANITE & LIMESTONE, LLC, | § | |
| ROBERT E. GLADU a/k/a "BOBBY" | § | |
| GLADU, and LACY GLADU, | § | |
| | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiff's Motion for Summary Judgment (Dkt. #24) (the "Motion"). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This is a breach of contract case related to several construction projects. Construction projects often involve multiple contractual relationships among the project owner, the contractor performing the work, and a surety that issues a bond guaranteeing the contractor's performance. In exchange for the guarantee, the contractor agrees to post collateral for the surety if the surety faces claims related to the contractor's performance of the construction project. The dispute here is between Plaintiff FCCI Insurance Company, a surety company, and Defendants Artisan Masonry, Inc. ("Artisan"), A&A Granite & Limestone, LLC ("A&A") and Robert E. Gladu a/k/a "Bobby" Gladu ("Gladu") (collectively, "Defendants"),[1] two contractors and their owner.

---

[1] Plaintiff does not seek summary judgment against Lacy Gladu, so she is not the subject of this opinion.

Specifically, Plaintiff alleges that Defendants breached an agreement named "General Indemnity Agreement Contract Bonds" (Dkt. #24-3) (the "Agreement"). On February 3, 2026, Plaintiff moved for summary judgment (Dkt. #24). Plaintiff argues that Defendants "agreed to indemnify [Plaintiff] against loss and post collateral with construction contracts for the issuance of bonds in connection with construction contracts" (Dkt. #24 at p. 2). Plaintiff further argues that Artisan "defaulted on its obligations under the bonded construction contracts, triggering [Plaintiff's] obligations under the bonds" (Dkt. #24 at p. 2). Plaintiff also contends that it provided Defendants "written demand . . . to deposit collateral in the amount of [Plaintiff's] net loss under the Bonds" (Dkt. #24 at p. 2). According to Plaintiff, summary judgment must be granted because it is undisputed that Defendants were obligated to post collateral upon written demand, whether the underlying claims were disputed or not, and failed to do so (Dkt. #24 at p. 2).

Defendants oppose the Motion (Dkt. #39). They argue that it must be denied because (1) Plaintiff relies on Texas law despite the existence of a Florida choice-of-law clause in the Agreement; (2) there is a fact issue regarding "the amount [Plaintiff] claims is due," as certain amounts "were either (i) paid by Artisan . . ., or (ii) no evidence exists establishing that [Plaintiff] actually paid [them]"; and (3) the payments Plaintiff asserts it "remitted to an [engineering firm] are disputed" and artificially inflated (Dkt. #39 at pp. 1–2).

Plaintiff filed a reply (Dkt. #42). The reply points out that Defendants do not dispute liability—or at least their liability to Plaintiff, the surety (Dkt. #42 at p. 2). Plaintiff further argues that the Agreement's terms preclude Defendants from refusing to post collateral even if they dispute the merits of the claims made against Plaintiff (Dkt. #42 at p. 2). As to the issue of choice-of-law, Plaintiff argues that Texas law applies despite the existence of the choice-of-law

2

clause, but that summary judgment is warranted even assuming Florida law applies (Dkt. #42 at pp. 3–5).

Before evaluating the Motion, the Court will set forth the pertinent contractual provisions from the Agreement and the disputed project amounts. In the "Indemnity" section of the Agreement, Defendants agreed to:

[E]xonerate, indemnify, keep indemnified, and save harmless [Plaintiff] from and against any and all demands, liabilities, loss, costs, penalties, obligations, interest, damages or expenses of whatever nature or kind, as well as fees of attorneys, engineering and any other outside consulting or expert fees, and all other expenses, costs and fees incurred:

1.  by reason of being requested to execute or procure the execution of any Bond;

2.  by having executed or procured the execution of any Bond;

3.  by reason of any claim, demand, notice, action, lawsuit or cause of whatsoever kind or nature made, asserted or threatened against Surety and in any way related to a Bond;

4.  investigating claims or potential claims and adjusting claims;

5.  procuring or attempting to procure the discharge of Bonds;

6.  by reason of the failure of [Defendants] to perform or comply with any of the covenants and conditions of this Agreement;

7.  attempting to recover losses or expenses from [Defendants] or third parties, whether Surety shall have paid out any such sums or any part thereof; and/or

8.  in enforcing any of the covenants or conditions of this Agreement.

(Dkt. #24-3 at p. 3).

The Agreement also contains a "Collateral Security" section, which provides that if a claim is made against Plaintiff, "whether disputed or not," Defendants shall, upon demand:

[D]eposit with [Plaintiff] cash or other equivalent property in an amount acceptable to [Plaintiff], in its sole and absolute discretion, as collateral security, in sufficient amount to protect [Plaintiff] with respect to such claim or potential claims and any expense or attorneys' fees. Such collateral will be held or utilized by [Plaintiff], at its sole and absolute discretion, until [Plaintiff] has received written evidence of its complete discharge from such claim or potential claims, and until it has been fully reimbursed for all loss, cost, court cost, expense, experts' fees, consultants' fees, attorneys' fees, appellate attorneys' fees, and unpaid premiums.

(Dkt. #24-3 at p. 6).

The "Indemnity" section of the Agreement also addresses the possibility of a future dispute between the parties (Dkt. #24-3 at p. 3). It provides that in any claim or suit under the Agreement, "an itemized statement of the aforesaid loss and expense, sworn to through affidavit or otherwise by a representative of [Plaintiff], or the vouchers or other evidence . . . of disbursement by [Plaintiff] shall be prima facie evidence of the fact and extent of the liability" of Defendants (Dkt. #24-3 at p. 3). In the instant action, Plaintiff set forth an itemized statement of losses sworn to through affidavit by Plaintiff's director of surety claims, which set forth the following projects and losses:

| Bond No. & Obligee | Project | Penal Sum |
|---|---|---|
| 4405743<br>Turner Construction | Career Institute North at Walnut Hill | $2,878,143.00 |
| 4405750<br>Baten and Shaw Construction | Fate Place and the Park | $1,172,942.00 |
| 4406392<br>Byrne Construction Services | Allen Fire Station #6 | $1,117,378.00 |
| 4406382<br>Harrison Walker & Harper | Cumby High School | $256,190.55 |
| 4406385<br>Crossland Construction Company | Melissa High School Phase 3 | $2,320,000.00 |
| 4406390<br>Harrison Walker & Harper | North Lamar ISD ES | $1,497,050.00 |
| 4406384<br>Crossland Construction Company | Melissa Public Safety HQ | $285,000.00 |
| 4407622<br>Harrison Walker & Harper | Prairieland ISD – Athletic Facility | $809,493.75 |
| 4407623<br>Harrison Walker & Harper | North Lamar HS Fine Arts Addition | $444,340.00 |
| 4405748<br>Baten and Shaw Construction | Pilot Point ISD Renovations | $79,675.00 |

4

(Dkt. #24-3 at p. 3).

The Motion is now ripe for adjudication.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion [for summary judgment]." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of

evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. *See Solomon v. Hou. Corrugated Box Co.*, 526 F.2d 389, 396–97 (5th Cir. 1976). Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (citation modified). The Court must consider all of the evidence but "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

## ANALYSIS

Summary judgment will be granted because Defendants have not identified a conflict between Texas and Florida law, Defendants' liability under the Agreement is undisputed, and Defendants' arguments regarding damages do not prevent enforcement of the Agreement. Summary judgment will be denied as to attorney's fees because the record is insufficient for the Court to conclude that the amount of reasonable attorney's fees is conclusively established.

## I.    Choice of Law

Defendants argue that the Motion should be denied because it cites Texas law despite the existence of a choice-of-law clause requiring the application of Florida law. The argument fails because Defendants failed to carry their burden to demonstrate that Texas and Florida law conflict.

"A federal court sitting in diversity follows the choice of law rules of the state in which it sits." *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 258 (5th Cir. 2014) (citation modified). Thus, the Court would apply Texas law to determine the enforceability of the choice-of-law clause. However, the Court should undertake a choice-of-law analysis only "if the laws are in conflict." *Playboy Enters., Inc. v. Sanchez-Campuzano*, 519 F. App'x 219, 225 (5th Cir. 2013) (per curiam) (unpublished). Texas courts "presume that other states' laws are the same as its own; thus, the party advocating the use of a different state's laws bears the burden of rebutting that presumption." *Id.* Relying on this precedent, in *Pickle v. Universal Cable Holdings, Inc.*, the Northern District of Texas applied Texas law despite the existence of a Missouri choice-of-law provision. 534 F. Supp. 3d 663, 671 (N.D. Tex. 2021). In that case, "[n]either party demonstrate[d] an inconsistency between the laws" of Texas and Missouri, and the "parties agree[d] that the outcome of the case [was] the same regardless" of which law applied. The *Pickle* court therefore declined to "address the choice-of-law issue." *Id.*

Here, Defendants do not identify, let alone demonstrate, any conflict between Texas and Florida law. Thus, Defendants failed to rebut the presumption that Florida and Texas share the same laws. *Playboy Enters.*, 519 F. App'x at 255. Defendants' argument that the Motion should be denied because Plaintiff cites Texas law therefore fails.

## II.    Defendants' Liability Under the Agreement

Defendants do not dispute that the Agreement is an enforceable contract. Nor do they dispute that the Agreement is unambiguous. Their arguments generally fall into two categories: arguments questioning the merits of the underlying claims of the project owners against Plaintiff, and arguments questioning the amount of the losses incurred by Plaintiff. Neither has merit.

### A.    Defendants' arguments challenge the merits of the underlying claims by project owners against Plaintiff, but not Defendants' liability to Plaintiff.

In Defendants' "Overview of Disputed Facts" section,[2] they argue that several of the construction projects at issue "were nearly completed" (Dkt. #39 at p. 5). The terms of the Agreement render this argument irrelevant to the present dispute.

The Agreement's "Collateral Security" section provides that if a claim is made against Plaintiff, Defendants "shall" deposit cash or other equivalent collateral with Plaintiff, whether the claim is "disputed or not" (Dkt. #24-3 at p. 6). If Defendants wanted the ability to avoid depositing collateral by challenging the project owners' claims, they should have negotiated different terms. *See Chevron USA, Inc. v. Aker Mar. Inc.*, No. CIV.A. 03-2027, 2010 WL 4539385, at *4 (E.D. La. Nov. 3, 2010) ("Although the Court acknowledges the breadth of the indemnity clause, nothing prevents sophisticated parties from bargaining for favorable contract terms."). Disputes with the project owners do not affect Defendants' obligations to Plaintiff, the surety.

Defendants do not argue, and the Court sees no reason to hold, that the terms of the Agreement are unenforceable here. Therefore, the Court will give effect to the Agreement. *See*

---

[2] This district's local rules require the nonmovant responding to a motion for summary judgment to include a "response to the 'Statement of Undisputed Material Facts.'" LOCAL RULE CV-56(b). Furthermore, the local rules provide that any facts supported by admissible evidence will be deemed uncontroverted "except to the extent that such facts are controverted in the responsive brief." *Id.* CV-56(c). The Court will consider Defendants' Overview of Disputed Facts section, but the facts that Defendants' response does not address are deemed uncontroverted.

*Travelers Cas. & Sur. Co. of Am. v. James*, No. 3:15-CV-1999-N, 2016 WL 9306254, at *5 (N.D. Tex. Oct. 5, 2016) ("Under Texas law, when the terms of an indemnity agreement are clear and unambiguous, the court will give effect to the agreement as written." (citation modified)). Accordingly, whether the project owners' claims against Plaintiff are "disputed or not," Defendants were bound to deposit collateral upon Plaintiff's demand.

### B.    Defendants' arguments regarding damages are foreclosed by the terms of the Agreement.

Defendants make several arguments regarding Plaintiff's claimed damages. None raise a genuine issue of material fact.

#### 1.    Lack of "Substantiating Documents"

Defendants take issue with Plaintiff's summary judgment evidence supporting damages. They argue that Plaintiff failed to attach "substantiating documents" like invoices (Dkt. #39 at p. 10). The problem for Defendants is that they signed a contract that makes this a non-issue. The Agreement provides that in any claim or suit under the Agreement, "an itemized statement of the aforesaid loss and expense, sworn to through affidavit or otherwise by a representative of [Plaintiff], or the vouchers or other evidence . . . of disbursement by [Plaintiff] shall be prima facie evidence of the fact and extent of the liability" of Defendants for collateral (Dkt. #24-3 at p. 3).

Here, Plaintiff's Motion includes a sworn affidavit from Plaintiff's director of surety claims, Jim Kisner ("Kisner"). The affidavit includes an itemized statement of Plaintiff's claimed loss and expense. Defendants agreed that such affidavit, by itself, constitutes "prima facie evidence of the fact and extent of liability" (Dkt. #24-3 at p. 3).[3] They cannot now argue that different

---

[3]    The loss run and Kisner Affidavit show that Plaintiff incurred a $731,506.64 loss on payment bonds, a $761,059.61 loss on the performance Bonds, a $102,737.55 expense for legal fees, and a $226,250.58 expense for consulting fees, making the total loss $1,616,882.86 (Dkt. #24-5 at p. 2; *see also* Dkt. #24-1 at p. 9).

evidence is required. *See James*, 2016 WL 9306254, at *5 ("Courts have consistently upheld prima facie clauses, and the clauses are not against public policy."). This argument fails.

### 2.   Reasonableness of Amounts Paid and Similar Issues

Defendants argue that a genuine issue of material fact exists as to: (1) the reasonableness of the amounts paid to a consulting firm, (2) the attorneys' fees Plaintiff claims it incurred, (3) whether Plaintiff acted reasonably when negotiating payments to the project owners or whether it did so in good faith, (4) whether Plaintiff paid a subcontractor "to not" complete a project, and (5) whether certain payments have been properly credited to Defendants (Dkt. #39 at p. 8).

Under Texas law, when an indemnity agreement contains a prima facie evidence clause, the only way that an indemnitor "may successfully attack payments made by the Surety [is] by pleading and proving fraud or lack of good faith by the Surety." *James*, 2016 WL 9306254, at *5 (citation modified). Pleading and proving negligence or recklessness cannot satisfy this requirement. *Engbrock v. Fed. Ins. Co.*, 370 F.2d 784, 786–87 (5th Cir. 1967) ("Appellant did not plead fraud. However, he asserts the issue of good faith was raised by his pleading that Surety 'did not do what it should have done in order to limit or minimize the costs on (the Eagle Lake) job.' At most, the pleading alleges negligence by Surety."); *Travelers Cas. & Sur. Co. of Am. v. Padron*, No. 5:15-CV-200-DAE, 2019 WL 1602018, at *8 (W.D. Tex. Mar. 22, 2019) ("[W]illful ignorance or reckless disregard for the facts do not amount to pleading or proving fraud or lack of good faith.").

Furthermore, if the contract gives the surety the right to settle a claim for any reason, only fraud can overcome a prima facie evidence clause. *See, e.g.*, *id.* at *6 ("[T]he Indemnity Agreement expressly gives Travelers sole discretion in its payment or settlement of claims. With no contractual source for a duty of good faith, Primestar must show that Traveler's settlement and payment of

claims involved fraud."). In the "face of a prima facie clause, indemnitors carry a heavy burden to avoid summary judgment." *Id*. at *5 (citation modified).

Here, Defendants did not plead fraud or lack of good faith (*See generally* Dkt. #23). Even if the Court construed Defendants' response to the Motion as a pleading asserting a lack of good faith, the terms of the Agreement require more. The Agreement gave Plaintiff the right to "[d]etermine in its sole discretion whether any claims shall be paid, compromised, defended, prosecuted or appealed," and Defendants agreed to be "conclusively and unconditionally bound by [Plaintiff]'s determination" in the absence of "fraudulent intent" by Plaintiff (Dkt. #24-3 at p. 5). Thus, Defendants' burden was to plead and prove fraud. *Id*. at *6.

Defendants did not plead fraud, and they have not sought leave to amend their answer. Therefore, Defendants failed to carry the heavy burden to rebut the prima facie evidence showing the fact and extent of their liability.[4]

## III.    Defendants' Liability for Reasonable and Necessary Attorney's Fees

Summary judgment will be denied without prejudice as to the amount of attorney's fees. While courts have enforced broad indemnity provisions akin to the ones in the Agreement, the

---

[4] Even if Defendants had pleaded fraud, the Court is unconvinced that Defendants introduced competent summary judgment evidence to raise a fact issue. Defendants attach the unsworn affidavit of Defendant Robert Gladu, which does not assert fraud, and is unsigned (See Dkt. #39-1 at p. 4). Thus, the exception that could allow the Court to consider the unsworn affidavit does not apply. *See Rodrigues v. U.S. Bank Nat'l Ass'n*, No. 3:20-CV-0291-D, 2021 WL 2717538, at *1 (N.D. Tex. July 1, 2021) ("In general, an unsworn declaration is insufficient to raise a fact issue precluding summary judgment. But 28 U.S.C. § 1746 provides an exception. For the exception to apply, the declaration must be signed . . . [among other things]" (citations omitted)). Defendants are seemingly aware of the signature requirement, since they attached the declaration of one of their attorneys which does include a signature (See Dkt. #39-6 at p. 3). That declaration does not allege fraud either. In any event, the Court is not convinced that the facts alleged would raise a fact issue on fraud, as opposed to mere negligence or recklessness. For example, Gladu's affidavit contends that Plaintiff's loss runs reflect that it paid more than $400,000 in consulting fees, contradicting an invoice showing charges of "approximately $254,904.57" (Dkt. #39 at p. 11). But Plaintiff does not seek $400,000 in recovery for consulting fees (see Dkt. #24-5 at p. 2; Dkt. #24-1 at p. 3), and Defendants included duplicate pages in their calculations when reaching the $254,904.57 figure.

provisions are not a blank check that allows circumventing the requirement that attorney's fees be reasonable and necessary. *See Padron*, 2019 WL 1602018, at *16 (rejecting argument that because prima facie evidence clause covers all "loss," that attorney's fees were conclusively established without sufficient proof of reasonable necessity). The Court will follow the lead of *Padron* and grant summary judgment as to liability for attorney's fees but deny summary judgment without prejudice on the amount of reasonable and necessary attorney's fees.

* * *

In sum, Plaintiff carried its burden to demonstrate it is entitled to summary judgment, and Defendants failed to carry their burden to raise a genuine issue of material fact. The Agreement required Defendants to post collateral upon Plaintiff's demand, whether the underlying claims are disputed or not. Arguments challenging the merits of the underlying claims must therefore fail. The Agreement also vests Plaintiff with the sole discretion to determine what claims to settle and for what amount. Moreover, the Agreement contains a prima facie evidence clause rendering Plaintiff's evidence sufficient to establish the fact and extent of Defendants' liability absent a showing of fraud. Defendants did not allege fraud here. If Defendants wanted lesser showings to be sufficient to avoid depositing collateral, they should have negotiated a different contract.

Under the unambiguous terms of the Agreement, Plaintiff is, in large part, entitled to summary judgment. But the factual record is insufficient for the Court to hold that the amount of reasonable and necessary attorney's fees is established as a matter of law.

Accordingly, the Court will grant the Motion in part and deny it in part.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. #24) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. #24) is **DENIED without prejudice** as to the amount of reasonable and necessary attorney's fees and costs.

It is further **ORDERED** that Plaintiff's Amended Motion for Preliminary Injunction (Dkt. #34) is hereby **DENIED as moot**.

The Court will issue a separate final judgment.

**IT IS SO ORDERED.**

 **SIGNED this 1st day of July, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE